Chief Justice Boyle
delivered the Opinion of the Court.
On the Gtb of October, 1817, Cotton sold to Ward part of a half acre lot in Louisville, known on the plan of the town by No. 120, at the price of gl 2000, payable in three instalments of ^4000'each,for which. Ward, with Grayson his security, executed three notes, and Cotton at the same time executed to Ward a deed of conveyance for the lot.
The deed purports to convey “all the lot with its appurtenances “except so much, thereof, as has hcre- “ tofore been sold and conveyed by James McCon- “ nell and wife, to John Gvvathmey, to wit, twenty “ six feet, on the Northwardly end, extending back “ from the said cross street, to the Eastwardly line “ of the said lot,” and contains covenants on the part of Cotton, of seizin in fee, good right to sell, of general warranty, and for further assurance.
The note which first become due was paid, but the others not being paid when they fell due, suits were brought thereon, and judgments recovered at law by Cotton.
To enjoin proceedings upon these judgments, Ward on the 20th of November, 1819, filed his bill in chancery, in which after setting forth the preceding transaction, ha in substance states as the grounds of his equity, that Cotton was not. seized of a sure and indefeasible title, and had not right to sdb and,
'y¡e,,eii fcois’m Cot ■ ton’» (tile,
Further allethe billf61 ° G
To shew the defect of title, he alledges that John Bcyburn, Sen. was the original purchaser of the lot No. 130, from the trustees, and that by \ ¡Hue of an order given by Ileybnrn, upon the trustees, to James McConnell, and by him assigned to James Patten, the lot was conveyed by the trustees to Patten, that on the 26th of April, 1811, Patten conveyed the lot to Cosby and Chambers, upon trust to re-convey the same to him in case án injunction obtained by McConnell, against a judgment recovered by the United States againt him, upon á bond in which Patten was his security, should he proseented with success, or the debt should be paid by McConnell or Patten, but if they should fail to do so, that Cósby and Chambers, who had heroins sureties for McConnell in the injunction bond, might sell tiie lot for their indemnity See., that said deed though lodged in the office had not been acknowledged by Patten, and was attested by only one witness* and that Patten’s wife, then and still living; liad not relinquished her right of dower, that Patten after-wards, for the purpose of paying the debt to the United States or a part of it, with tho assent of' Cosby and Chambers sold and conveyed to John Gwathmey, by deed of the 4th of December, 1811, that part of the lot which extends from the North end or line thereof, 36 feet South, having a front of 36 feet on Cross street, and extending back 105 feet; that on the 6th of November, 1813, Mc;. onnell and wife, and Cosby and Chambers conveyed the lot to Cotton, but that the con', eyance was made in violation of the trust, and without the consent of Patten, and that Cotton at tho time of the csnveyancé to him* had full knowledge of the deed to Gwathjfley.
Ward further states that he purchased the lot with a view of making valuable improvements on it, but finding that Gwathmey was entitled to 36, instead of 26 feet of the lot, and that the title w.as otherwise involved in dispute, he was obliged in prudence to abandon his intention of improving it, and caused an offer to be made to Cotton to rescind the contract, which he refused to accept. He prayed for an/1 obtained an injunction, and asked that the con." *306 tract might be; rescinded or further assuranres decreed him, and for general relief.
.Answer of Colton,insisting- on the sufficiency of the title, and -promising -that the complainants objections should be re-¿ovod.
Defendant relies on cr>m■plai.iants undisturbed possession.
Defendant alleges a mistake in his deed to complain aut.
Cotton in bis answer admits that be derives title tinder the deed from MeConnel, Cosby and Chambers, and insists that bis title is good. He states that the lot really belonged to McConnel, and that it was convoyed to Patten in trust, to indemnify him as security of McConnel!, for a debt due to the United States whirl) bad been paid by McConnel!, and though the deed was absolute, that Patten executed a writing expressive of the trust, which writing-had been lost., and that be, Cotton, was prosecuting a suit in equity, against the heirs and devisees of Patten, to obtain a release of their title, and thereby remove all doubts as to his right, and he prays that Ward may be compelled to accept of the title, when thus perfected, if even there should appear to have-been any previous defect, of which, however, lie avers he was totally ignorant at the time lie conveyed to Ward, and that he did then, -and still does believe his title good.
He charges, that upon Ids sale to Ward, he put him in possession of the lot, and that he has ever' since remained in quiet enjoyment oí it nijhout molestation or disturbance from any one.
He states that lie sold to V ard, only so much of the lot as bad not been previously conveyed to Gwathmey; but. that Grayson, the son-in law of Ward, who, at his request, drew the deed, inserted by mistake, 26 instead of 36 feet, as the quantity previously conveyed to Gwathmey. He alleges that Ward was well apprized of the previous conveyance to Gwathmey and of its extent, and as evidence of the fart, he refers to an answer in chancery of Ward, and to a deed of conveyance from Gwathmey to Bustard, in trust, for the benefit of Ward and others, bearing date the 20th of April, 1817, in which deed, am mg other things the lot No. 120, is conveyed, ami described as extending, and having a front, of 36 feet. lie further alleges, that at the time he sold to Ward, Gwathmey was in the. possession of the whole of his part of the lot, and had it completely covered by a brick stable, the wall of which was on the boundary lino between them, and *307 ibat Ward was well acquainted with the lot, knew what Gwathmey held, and what he was buying, and that a mistake in the description could not have deceived or misled him.
As to the propositions to rescind.
Cotton’s a,mended answer, shewing the objection to title removed.
Colton’s crosc bill for injttiichOH against judgment obt-iiaed by Ward,’ for brea-di of the covenant of seizin.
He denies that Ward ever proposed to rescind the contract, until after thelot had much declined in value, and states that before any part of the.purchase money was paid, be had discovered the mistake, in describing Gwathmey’s part of the lot, and offered to rescind the contract, but that Ward declined it.
At the April term, 1831, Cotton filed an amended answer, which he made a cross bill, stating that the suit alluded to in his former answer, against the heirs and devisees of Patten, had been decided in his favor, and the defendant therein, decreed to release their title to him, to all the lot sold by him to Ward, and that the decree had been carried into effect, in propf of which he refers to the proceedings in that suit, and he avers that he had thereupon executed a deed to Ward, bearing date the 7th of April, 1821, and offers to make any further assurance that the court may direct. He repeats, that Ward well knew what part of the lot was in possession of Gwathmey, and belonged to him, although he might not have known the precise number of feet; that Ward has quietly enjoyed it ever since his purchase and received the rents He alleges, that Ward has sustained not one cent of damr ages, in consequence of the state of the title, but offers, if he has, to pay whatever may he found upon, an issue of quantum damnifícalas, which lie prays the court to direet. He lurther states that vvard bad instituted an action at law, upon the covenants in his deed, and offers to pay the costs, which may have been incurred therein, and prays that the proceedings therein, tnay bo enjoined, but no injunction was-obtained.
At the November term, 1821, Cotton filed an a mendment to his cross bill, stating that at the time, Ward in his action at law, had obtained a judgment against him for §14,705, besides costs, and be prayed for and obtained an injunction.
Ward in his answer to the cross bill of Cotton, admits that he knew that Gwatluney’s stable stood up- *308 or, par$ of the loi, but denies that he knew how much of said stable stood upon the lot, or that more of it stood ou the lot, than is mentioned in the deed from Cotton to him. He slates that at the time the deed was drawn,"Cotton pretended not to know the precise number of feet that had been conveyed to Gwathmey, said he' would go and en-quire, afcid wh,en be returned reported the number of feet inserted in the deed. He charges that Cotton knew the number of feet, and concealed it. Ho admits lite execution of the deed from Gwathmey to Iluslard and others, in trust for himself and others, but says ho never read it, or heard it read, and that at the time of his purchase, he had no recollection pf the quantity of the said lot, which had been conveyed to Gwathmey. He insists Unit he believed lie wan purchasing a perfect and undisputed title, and urgen his right, lo proceed at law, upon the covenants in his deed from Cotton.
Ward’s ansi vior to Cot-' Ion’s c¡oí:s
V,' ¡ivil’s ímtrii- . ¡oil answer to Cotton.
Doom) oí' the dirciiit cbiirl, 'fnrcindincjdio óootrnct, no,l ipflH:ifr mils arid iiriprcn eoiiinU. ■
'.ftrrors allopjca by each pci iy. ■ -
Ward afterwards filed an amended answer, in which lie states, that ho was willing to reconvey the> lot to Cotton, upon his refanding with interest, the fHOOO, which had been paid, and the taxes amVchar* ges pai(Vby him. on the lot, deducting therefrom, the rents received by him, and he tenders a deed to be delivered upon those conditions. He; says that the estate, h much depreciated in value, and that he in advised, that the, conveyance obtained hv Cotton from 1’at ten’s heirs» does not enable him to make a good i Hie. and insists that a court of equity has no jurisdiction of the matters of the cross bill.
The. circuit court decreed the injunction obtained by Ward, to the judgments rendered against him, in favor of Cotton, for the purchase money to be, perpetuated, and that the injunction obtained by Cotton, to tiie judgment in favor of Ward, should be perpetuated: except as to the sum of gdOOO, with interest, "from the, 6th of June, 1818, and that it should bo dissolved to that extent, but, directed credit for rents to the amount of g 1,571 12 1-2, after deducting the amount of improvements &c. allowed by that court.'
From that decree both parties have appealed to this court, Cotton, becapsp the circuit court did. *309 noit compel Ward to keep the lot, and pay the purchase money, remaining due. a.id Ward, because the. ircuit court compeled him to pay more for rents, and allowed him less for improvements, than he conceives just.
It is not sufficient (.hat vendor acted without fraud in the sale; in seeking to compel the purchaser to accept the ti-tile, ho must show that it is nut materially defective.
Office of the videlicet.
In conveyance of a half acre town lot, excepting so much there- . of, as was sold and conveyed toJ. S. ■the expression of a precise ’ number of fact after■ wards added vuidcr a videlicet, is inoperative as to the extent of the conveyance—
*309 It is obviously proper, that we should first decido upon the points, arising out of the appeal taken on the part of Cotton, and in doing this, we will in the first place, consider the case on the supposition that there had been no suit brought, or judgment at law recovered.by Ward, against Cotton upon the covenants contained in the deed of convevanco from the latter to the former, and in the next place, we will examine the case, with reference to the effect the suit and judgment at law ought to have.
It is proper here to premise that there is not the slightest ground for imputing fraud to Cotton, in making the contract. When he sold to Ward, he was in possession of the lot, and held a conveyance for it, which from the evidence in the case, there is every reason to suppose he honestly believed confer-ed upon him a complete and perfect title. But however honest and upright his conduct may have been, in making the contract, yet as lie not only resists the rescisión of the contract, but claims, moreover, that Ward should be compeled to retain the title he has made, and accept of such further assurance as he is able to make, and pay the purchase maney; it is clear if his title, when ho sold and conveyed, was materially defective, and still remains so, that lie cannot be entitled to succeed. It is necessary, therefore, that we should examine the state of the title.
The first objection to the title we shall notice, is founded upon the error in the description, in the part owned by Gwathmey, and excepted in the deed from Cotton to Ward, as being only twenty-six feet, when in truth it was thirty-six feet.
This description is given uiider a videlicet, and is preceded by a general exception of the part sold and conveyed to Gwathmey. The general exception, it is plain, would have been sufficient,' to prevent any part of the lot owned by Gwathmey, from being included in rue. deed of conveyance from Coftonj but it seems to be supposed on the part of Ward, *310 that by the description under the videlicet, all but 26 feet of the lot was included in the deed, and consequently, as Gwathrney’s part was 36 feet, that Cotton had conveyed more than he had a right to. This we think, at least, extremely doubtful The office of a videlicet, is to explain what goes before, and when it is repugnant to, or inconsistent with the preceding matter, it is inoperative ami void. Suppose for example, it had been stated in the deed from Cotton, under the videlicet, thfit Gw at limey’s part of the lot was 46 feet, would not the whole of the lot except the 36 feet, which really belonged to Gwathmey, have passed by the deed? We apprehend it would, anti if so, the description under the videlicet, of G\vathme;’s part by a less number of feet than really belonged to him, would upon a like principle have no operation.
.ft nd—
Whore in such caso an error in the preciso quantity expressed under the videlicet is not by the fraud of the vendor, and the excepted part being covered by a building of 3. Si the owner, and I he purchaser being well acquainted with the lof, well knew what ground he was pur■•■•hasina:, he £ is no ground «f complaint.
.Perhaps the purchaser ought to be presumed to. know the preciso ¡-ai-tof a lot conveyed by deed of trust ioi his security, anti of which he had claimed the benefit, to repel his allegation of fraud against a seller to him, of (ho residue of tlio lot.
*310 Be this, however, as it may, we cannot think it material. The number of feet, as descriptive of Gwathmcy’s part of the lot, was not inserted through fraud, but by mistake, and from the nature of tlie transaction, if is evident, that NY ard could not have been deceived or misled by it, as to the part of the lot he was purchasing. Gwathmey was in possession of his part of the lot, and in fact liad a stable built on it, the wail of which was his boundary, and Ward was familiarly acquainted with the lot. A purchase of a lot under such circumstances, is not I,ike a purchase of a large tract, the whole of vv hich cannot be. surveyed by a single act of vision, ami the extent and quantify of which can, therefore, be designated only by the number of acres or poles it may contain. For here, the whole subject of the purchase, might be comprehended by a single glance of the eye. and as Ward must have seen and known the extent occupied by Gwathmey, and of course the extent of that which he was purchasing, if is evident, although he might not have known the exact number of feet contained in either parcel of the lot, that he could not have been deceived.
But he ought perhaps, to be presumed to know', even the precise number oí feet in Gwathmey's part of the lot; for it liad been conveyed by Gwathmey to Bustard and others, in trust for Ward ami others';. *311 and was described in the deed of conveyance as containing 56 feet in front, and as Ward not. only ad in its his knowledge of the deed, but appears to have claimed the-benefit, of it, he-ought to be presumed to know its contents
Whore the owner by ex-ecutory contract had caused tlio title to be made to his surety lor indemnify, and a tier discharging hit! liabilily, caused him to convoy i t to his vendee the title ' is valid.
if, therefore, the mistake made under the videlicet in the. description of the number of feet owned by Gwathmey. should be considered as operative,- and the deed from Cotton to Ward should be in consequence thereof, construed as a conveyance of more than Cotton had a right to, the mistake would clearly be such, as a coiirt of equity ought, and might, with propriety correct, and consequently Ward ought not to be permitted to avail himself of the mistake.
A second objection taken to the title- of Cotton is, that the conveyance to him from Cosby and Chain hers was made in violation of the trust under which they held the Jot. Wjere this true, and Patten, who conveyed to Cosby and Chamber®, bad been tlie real owner of the lot in equity, he or bis representatives might have, asserted their right to it, and the title of Cotton though-good at law. notwithstanding this objection, would have been defective in equity. But the lot really belonged not to Patten but to McConnell, who sold to Cotton. It is true, that the conveyance to Patten from the trustees of the town, was on its face absolute, but it was in fact, only intended as an indemnity to him, as the surety of McConnell to the United States, and at the time the conveyance was made to Patten, he executed to McConnel, a separate instrument of writing, shewing the nature of the transaction. That writing seems in the estimation of the parties, to have become after-wards functus officio, and has been lost or destroyed, but its execution is unquestionably proved. Nov is it true, that the conveyance to Cotton, from Cosby and Chambers, was made in violation of the trust, under which they held the lot; for the debt to the United States, which McConnell enjoined, had been paid, and the purposes of the conveyance by the trustees of the town to Patten, and by him to Cosby and Chambers, having bee» fulfiled, the lot was sold by- McCqhhcII to Cotton, and the conveyance *312 made to him by Cosby and Chambers, with the as1, sent of Patten, as is inferable from his repeated acknowledgments : and a conveyance thus made, cannot be said to have been made In violation of the trust:
.Evidence that tlie couveyiiiisc was so made by tlie trustee, extracted from the suit of the vendee agaimt the heirs of ccsfV.i tj¡ue trust.
That the deed to vendor was not registered, só as to ho good against subsequent creditors and purchasers, is no ¡qroum' for revision where ' ho vendor in .vuoli deed is dead, without e.re.Hturs, and >10 subsequent purchase is shown, and vendee is in possession.
Decree and conveyance removing the objection to the title obtained by «■tulor perilling t lie suit exhibited in an amendment.
Objection as to (lower of widow of rnomfbyher disclaimer, & decree a-l^oas" iul"
*312 All this indeed appears not from the proofs taken in this cause, but from the evidence in the suit brought by Cotton against Patten’s representatives, to obtain á release of their right; but it is sufficient that it appears in that suit, for none but Patten or his representatives rould claim or pretend to claim any right in virtue of the supposed violation of trust by Cosby and Chambers in conveying to Cotton, and as they are precluded from doing so, every one else must be precluded from asserting any claim for them.
The third objection taken to the title of Cotton, is that the deed from Patten to Cosby and Chambers, though executed by him, was never acknowledged or proved in the proper office, to be recorded. This appears to be true. Rut notwithstanding the deed was riot recorded, the legal title would pass thereby against Patten, or those claiming as volunteers under him. Tlie deed would not, it is true, be good, as agairistTfediiors and purchasers, without notice. But it is neither alleged, nor proved that there aro any creditors of, or purchasers from Patten and his representatives, and it is evident that there can be none, hereafter without notice, in as much as the possession held under the deed from Patten, would be notice.
All doubt or difficulty, however, with respect to this objection to the title, is removed by the decree obtained by Cotton against Patten’s representatives, by which they were compelled to release, and a deed has been accordingly executed in pursuance of the decree.
The fourth áml last objection we shall notice, is that the wife of Patten bad not relinquished her right of dower, and that she has survived her husband, and is still living. This is true in fact, and at the time of the execution of the deed from Cotton to Ward, Cotton’s title, to the. extent of her right of dower, was defective; but she never had asserted *313 ¿by claim, and .in the suit brought by Cotton ágaíhsi Patten’s representatives, to which she was a party, she ackowledge.s that her hush-ami only held the lot in trust, for the purposes alleged by Cotton, .and promptly disclaims all right or claim to the lot, or anypartof .it, and the court notwithstanding ,her disclaimer, decreed Her, with the other representatives of Patten, to .release her claim, She must, therefore, forever Hereafter, he precluded, as well by her owri disclaimer, as by the decree of the court, from asserting apy claim to the lot.
Lexecutory land^thcre be delay beyond the timo ^^cyan*6 by the fault of vendor the ^nevai compelled to accept thou-
But~
where the parties have s‘,„Ce 0f the* contrast and tUe^Uult of theven" dor: but is occasioned, 0f t!l0 tflj0 unknown at •a“ar|;t’|t'lie q"iryofthe* chancellor is whether the to convey at* the hearing, pme k?-s vendor to perfeothistitlc.
These are the only objections to the title in support of which Hiero is any .shadow of evidence, and as these are either not well founded or have been re^ moved, the title of Cotton is now. both in law. and equity, complete áiid perfect, and .was so when be tendered to Ward, before the final hearing of the cause, further assuraiice. .
Ought.Ward then, to. have been .compelled to receive such iurtuei* assurance? Where a contract tos* the conveyance is merely executory and a lime fixed for the conveyance to be made; if there be a tie lay beyond that time, in completing the title, which lias been occasioned by the fault of the vendor, Hie purchaser will not in general be compelled .to accept of the title. Even in such acaso, however, where the delay litis been occasioned by the state of the ti-tie, and not hy the negligence of the vendor, a court of equity, considering the time of performance not of the essence of the contract, unless expressly made só by.the stipulation of the parties, will compel the purchaser to accept the title. The iuvariahie enquiry of a court of equity, when about to pronounce a decree in suca case, is not whether t-he vendor was able, at the time, when he entered into the contract, but whether he is able to do so, and a purchaser cannot, it is said,.insist upon being discharged from Isis purchase upon the masters report of a defective title, if the same is capable of being made good, in a reasonable time. 1 Maddock’s, Chy. 349.
The British courts of equity have even gone so far as to give Hie vendor, on a bill feeing filed by him for a specific-performance, time to procure an act of parliament, to perfect his title. Sug. Ven. 252.
"Where the contract is executed and vendee on-joys the possession undisturbed, and tha vendor as soon as apprized of the objection to the title institutes ¡suits and removes it, so as to , have his title clear at the hearing, the purchaser sh-tl) accept a further assurance.
That purchaser ponding his bill for refeihon, or further assurance obtained a judgment in damages for a breach of the covenant of seisin in fee, and thereby compelled vendee to come with his bis cross bill for injunction is no grouurl of objection to a decree for further assurances, which vendor by clearing the title before hearing ’enables him* sell'to make.
Rut in litis 'case* the contract is not merely executory, on the 'part, of Cotton. Ho had conveyed to Ward, and put him in possession of the lot, and Ward had, in peace and quiet, enjoyed the posses - sion, without molestation or disturbance from any one, nor was there any delay on the part of Cotton, in perfecting his title; for he seems, as soon as he was apprized of the, objection to it, to have pursued with great diligence, the only means in his power, to remove those objections. If, therefore, in any case it is sufficient, 1 hat the Vendor is able to make a good title when the cause is heard, to compel the purchaser to accept it, undoubtedly it ought to be sufficient in such a ease as this; and as Cotton, before the hearing of the cause in this case, had removed the objection, to his tille, and had it in his power to make such further assurances as Ward had aright to demand, and had offered to do so, the court ought to have decreed Ward to accept, unless the judgment at law should present an insuperable objection to such a decree.
We will, therefore, examine in the second place, what effect that judgment ought to have upon the case.
A court of equity must either dismiss the parties, leaving them to Uie redress which the law affords, or it must give relief, either by setting ¿side the contract, or by decreeing its performance, by compelling Cotton to make, and Ward to accept, further asurarme. There- is no other alternative. To dismiss the parties, and leave them to their redress at law, would be manifestly un just. The judgment obtained by Ward, is for Use whole amount of the purchase money, with interest, and to permit him to exact the execution of that judgment, while he retains the title convey ed to him by Cotton and the possession of the lot, together with the rents and profits, would b.e too obviously iniquitous to admit of any shadow of defence. Some relief must, therefore, be granted, and as there was ño fraud on the part, of Cotton in making the contract, and the delay in making further assurance grew, not out of the fault or negligence of Cotton, but out of the state of the title, and he was able to make such further assurance, before the cause was heard, it is plain up *315 on the principles we have before stated that there is no ground to discharge Ward from his purchase, and set aside the contract, it consequently results, that the only relief which can be granted, is by decreeing the specific performance of the contract, 'by compelling Cotton to make, and Ward to accept further assurance.
Where purchaser first comes into court and prays in tho alternativo for further assurance or rescisión and the vendor clears his title and by cross bill for injunction 'against a j udgmont on the covenant of seisin, prays that purchaser may be compelled to accept the further assurance a decree confirming the contruit and directing the further assurance is but answering the prayer of both.
Costs.
Damagor.
Bibb for Ward; Denny, Attorney General, anti €rittenden for Cotton,
This relief would have been proper, as being the most adequate to the demands of justice, and therefore, tiie most equitable, had Cotton been the only complainant seeking the aid of a court of equity. But such is not the case. Ward had himself first appealed to the chancellor, asking either that the contract should be rescinded, or that Gotten should he compelled to make further assurance, and notwithstanding ho had, pending his suit in chancery, recovered judgment at law, he still continued the suit until it was finally heard, in the mean time, Cotton bad appealed to the same tribunal, and asked that Ward might be compelled to accept the farther assurance which Ward,in his bill, had asked that Cotton should be compelled to make. Thus by the concurrent act of both parties the court was put in the possession of the cause, and required to exert its jurisdiction, and whatever room there might be to doubt as to the relief which ought to'be granted in a case where Cotton alone was the complainant, in the actual attitude in which this case is presented, there certainly can be no doubt, that the court should decree a specific performance, by cotnmpclling Cotton to make and Ward to accept of further assurance.
The decree of the circuit court is, therefore, erroneous, and must he reversed, the cause remanded to that court, that a decree may be there entered, compelling Ward to accept of further assurance, and perpetually en joining him from proceeding upon his judgment at law, against Cotton, and dissolving the injunction staying the proceedings upon the judgments at law, obtained by Cotton against Ward, but without damages, and giving to Ward his cosls of his original bill, and to Cotton the costs of his cross bill.
Ward to pay the cost of both appeals to this court.